UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ARIZ ARLEY VIAFARA,<br>on behalf of himself,<br>FLSA Collective Plaintiffs and the Class, | : | |
| | : | |
| Plaintiffs, | : | **OPINION AND ORDER** |
| - against - | : | **12 Civ. 7452 (RLE)** |
| MCIZ CORP., et al., | : | |
| Defendants. | : | |

**RONALD L. ELLIS, United States Magistrate Judge:**

## I.   INTRODUCTION

Plaintiff Ariz Arley Viafara ("Viafara") worked as a mechanic for Defendant City Sights New York LLC ("City Sights"). On October 4, 2012, he commenced this action as a putative class action under Federal Rule of Civil Procedure 23 and as a collective action under 29 U.S.C. § 216(b), on behalf of himself and others similarly situated, claiming that Defendants had failed to pay him overtime wages to which he was entitled under New York Labor Law, wages for off the clock work, and spread of hours payments. (Compl. ¶¶ 1-2.) On behalf of the proposed class, Viafara asserted that Defendants owed statutory damages under New York Labor Law for failure to provide wage notices required by statute. (*Id.* at ¶ 55.) He amended the Complaint on March 4, 2013. (Am. Compl.) In addition to damages for these violations, he sought attorneys' fees and reimbursement of expenses, interest, liquidated and/or punitive damages, and injunctive and declaratory relief. (*Id.* at 15-16.) This action was referred to the undersigned for general pretrial on February 1, 2013. (Docket No. 16.) On July 10, 2013, the Parties consented to conduct all proceedings before the undersigned. (Docket No. 50.)

Plaintiffs are employees of MCIZ Corporation ("MCIZ"), a double decker bus tour company, and JAD Transportation, Inc. ("JAD"), a corporation that keeps wage and employee records for MCIZ Corporation.  (Am. Compl. ¶¶ 8-9.)  Before the Court are motions for certification of the settlement class, final approval of the class action settlement, approval of the FLSA settlement, and approval of attorneys' fees and administrative fees, reimbursement of expenses, and service awards.

Having considered the Motions for Certification of the Settlement Class, Final Approval of the Class Action Settlement and Approval of the FLSA Settlement, the Motions for Approval of Attorneys' Fees, Administration Fees, and Reimbursement of Expenses, the Motions for Approval of Class Representative Service Awards, and the supporting declarations, the oral argument presented at the November 18, 2013 fairness hearing, and the complete record in this matter, for the foregoing reasons, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

The Court certifies the following classes under Federal Rule of Civil Procedure 23(a) and (b)(3), for settlement purposes (the "Rule 23 Class Members"):

(1) all mechanics, bus drivers, and miscellaneous workers employed through MCIZ memorialized in the Settlement and Release Agreement ("MCIZ Settlement Agreement") from October 4, 2006, to July 5, 2013;

(2) all employees employed through JAD, as memorialized in the Settlement and Release Agreement ("JAD Settlement Agreement") from October 4, 2006, to July 5, 2013.

## II.   BACKGROUND

After exchanging document discovery to enable Plaintiffs to calculate damages and undertaking negotiations, the Parties reached a settlement totaling $550,000 ($275,000 for the

MCIZ Settlement and $275,000 for the JAD Settlement). Decl. of C.K. Lee in Supp. Of Pls.' Mot. for Certification of the MCIZ Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("MCIZ Lee Decl.") ¶¶ 13-19; Decl. of C.K. Lee in Supp. of Pls.' Mot. for Certification of the JAD Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("JAD Lee Decl.") ¶¶ 13-19.[1] The Parties reached this settlement after a mediation under the supervision of mediator Bonnie Siber Weinstock, Lee Decls.¶ 14, and two settlement conferences before the undersigned on April 29, 2013, and June 11, 2013. At the June 11, 2013 settlement conference, the Parties reached an initial agreement on settlement. *Id.* During the months of June and July 2013, the Parties reduced the terms of the settlement for the class of employees employed through MCIZ and the class of employees employed through JAD to formal settlement agreements, the MCIZ Settlement and the JAD Settlement. *Id.* ¶ 15.

On August 16, 2013, this Court entered an Order preliminarily approving the MCIZ Settlement on behalf of the class set forth therein (the "MCIZ Class" or the "MCIZ Class Members"), preliminarily certifying the settlement class under New York Labor Law, conditionally certifying the settlement class under FLSA, preliminarily approving of Lee Litigation Group, PLLC as class and collective counsel, and authorizing notice to all Class Members. (Docket No. 55.)

On August 23, 2013, this Court entered an Order preliminarily approving the JAD Settlement on behalf of the class set forth therein (the "JAD Class" or the "JAD Class Members"), preliminarily certifying the settlement class under New York Labor Law,

---

[1] The MCIZ Lee Declaration and the JAD Lee Declaration shall together be referred to as "Lee Decls."

conditionally certifying the settlement class under FLSA, preliminarily approving of Lee Litigation Group, PLLC as class and collective counsel, and authorizing notice to all Class Members. (Docket No. 60.)

On September 5, 2013, the claims administrator sent Court-approved notices to all MCIZ Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement for Class Members in New York, the state where Rule 23 claims were brought, and of Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees, and their out-of-pocket expenses.  MCIZ Lee Decl. ¶ 21.  No class members objected to the settlement, and seven opted out of the settlement.  *Id.* ¶¶ 22-23.

On September 12, 2013, the claims administrator sent Court-approved notices to all JAD Class Members.  JAD Lee Decl. ¶ 21.  The notices informed them of their rights under the settlement, including the right to opt out or object to the settlement for Class Members in New York, the state where Rule 23 claims were brought, and of Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees, and their out-of-pocket expenses.  (Docket Nos. 53, 58).  Three class members objected to the settlement, and twenty-five opted out of the settlement.  JAD Lee Decl. ¶¶ 22-23.

On November 4, 2013, Plaintiffs filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval") for the MCIZ Settlement.  That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Class Representative Service Awards ("Motion for Service Awards") for the MCIZ Settlement.  Defendants took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

4

On November 7, 2013, Plaintiffs filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval") for the JAD Settlement.  That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Class Representative Service Awards ("Motion for Service Awards") for the JAD Settlement.  Defendants took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on November 18, 2013.  JAD Class Members Ronald A. Verni ("Verni") and Edward Cordova ("Cordova")–two of the class members who had objected to the settlement–testified at the hearing.  Verni first testified that he only wanted to make a comment, not an objection.  He testified that he had never heard any workers complaining about lack of overtime.  He testified that he agreed with Defendants' position.  Cordova testified that he thought the amount of the settlement was not sufficient because Defendants were avoiding truck inspections and falsifying records.

## III.   DISCUSSION

Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).  Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are approximately 1,224 JAD Rule 23 Class Members and 387 MCIZ Rule 23 Class Members, and, thus, joinder is impracticable.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").  The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement.  Viafara and the MCIZ and JAD Class Members share common issues of fact and law, including whether Defendant failed to pay them overtime wages, off the clock wages, and

spread of hours premium in violation of state wage and hour laws, and failed to provide statutory notice as required by New York Labor Law. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues that help to satisfy Rule 23 commonality requirement include "whether [Defendant] failed to pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [Defendant] maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked").

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Viafara's claims arose from the same factual and legal circumstances that form the bases of the MCIZ and JAD Class Members' claims. *See Morris*, 859 F. Supp. 2d at 616. Plaintiffs also satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that Viafara's and the MCIZ and JAD Class Members' interests are at odds. *Id.* at 616; *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011).

In addition, Plaintiffs' counsel, Lee Litigation Group, PLLC will adequately represent the interests of the MCIZ and JAD Classes. Fed. R. Civ. P. 23(a)(4). *See Hernandez v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2013 WL 4145952, at *4 (S.D.N.Y. Aug. 4, 2013) (finding Lee Litigation Group, PLLC "well qualified" to represent the class). C.K. Lee, lead counsel for Lee Litigation Group, PLLC, has acted as lead counsel in many wage and hour class and collective actions. Lee Decls. ¶ 4.

Plaintiffs also satisfy Rule 23(b)(3). Plaintiffs' common factual allegations and a common legal theory – that Defendants violated federal and state wage and hour laws by failing

to pay overtime wages, off the clock wages, spread of hours premium and that Defendants owed

Plaintiffs statutory damages under New York Labor Law for failing to provide statutory notice–

predominate over any factual or legal variations among class members. *See Torres v. Gristede's*

*Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at \*16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs

"introduced sufficient proof that Defendants engaged in a common practice to deny employees

overtime pay," and "this issue predominates over any individual calculations of overtime

wages").

Class adjudication of this case is superior to individual adjudication because it will

conserve judicial resources and is more efficient for class members, particularly those who lack

the resources to bring their claims individually. *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ.

6451, 2011 WL 4599822, at \*3 (S.D.N.Y. Aug. 16, 2011). Viafara and the MCIZ and JAD

Class Members have limited financial resources with which to prosecute individual actions.

Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct

occurred within its jurisdiction. Employing the class device here will not only achieve

economies of scale for class members, but will also conserve judicial resources and preserve

public confidence in the integrity of the system by avoiding the waste, delay, and repetitive

proceedings and by preventing inconsistent adjudications. *See Hanlon v. Chrysler Corp.*, 150

F.3d 1011, 1023 (9th Cir. 1998) (class action against automobile company for defective latches

superior when individual claims would burden judiciary and when high litigation costs relative

to potential relief would disincentivize individual plaintiffs from bringing claims); *see also*

*Morris*, 859 F. Supp. 2d at 617; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164

(S.D.N.Y. 2008).

## A.    Approval of Settlement Agreement

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116; *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005).

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation, Third, § 30.42 (1995)); *see also D'Amato*, 236 F.3d at 85.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

### 1.    Procedural Fairness

The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Reyes*, 2011 WL 4599822, at \*4.  The settlement was reached after the Parties had conducted a thorough investigation and evaluated the claims and defenses, and after arm's-length negotiations between the Parties.  Lee Decls. ¶¶ 5-16

Class Counsel examined Defendant's data showing the number of MCIZ and JAD Class Members, and their work periods and compensation structures.   Mem. of Law in Supp. of Pl.'s Mot. for Final Approval in the MCIZ Settlement (MCIZ Pl. Mem.), at 2;  Mem. of Law in Supp. of Pl.'s Mot. for Final Approval in the JAD Settlement (JAD Pl. Mem.), at 2[2].  Based on this, Plaintiffs were able to perform damages calculations.  *Id.*  In addition to engaging in settlement discussions through telephone conferences, the Parties attended a mediation on April 16, 2013, before mediator Bonnie Siber Weinstock and two settlement conferences before the undersigned on April 29, 2013, and June 11, 2013.  Lee Decls. ¶ 14.  The Parties came to a preliminary agreement on the material terms of the settlement at the June 11, 2013 settlement conference.  *Id.* These arm's-length negotiations involved counsel and a professional mediator, raising a presumption that the settlement achieved meets the requirements of due process.  *See Wal-Mart Stores*, 396 F.3d at 116; *Reyes*, 2011 WL 4599822, at \*4.

In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.  *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF)(DCF), 2012 WL 5862749, at \*2 (S.D.N.Y. Nov. 15, 2012) (endorsing early

---

[2] MCIZ Plaintiffs' Memorandum and JAD Plaintiffs' Memorandum shall together be referred to as "Pl. Mems."

settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211 (LTS)(HP), 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082 (JCF), 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The parties here acted responsibly in reaching an early pre-suit settlement. *See Hernandez*, 2012 WL 5862749, at *2; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

### 2.    Substantive Fairness

The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval. The classes' reactions to the MCIZ Settlement and the JAD Settlement were positive. The Notices included an explanation of the allocation

formula and an estimate of each Class Member's award.  The Rule 23 Notice also informed Rule

23 Class Members of their right to object to or exclude themselves from the Settlement and

explained how to do so.  No Class Member objected to the MCIZ Settlement, and only seven of

the 387 Rule 23 MCIZ Class Members opted out.  Only three Class Members objected to the

JAD Settlement, and only twenty-five of the 1,224 JAD Class Members opted out.  This

favorable response demonstrates that the classes approve of the Settlements and supports final

approval.  *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862, at *4

(E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class member submitted

timely objections and two requested exclusion); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381

(ALC), 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (the fact that no class members

objected and two opted out demonstrated favorable response weighing in favor of final

approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the

vast majority of class members neither objected nor opted out is a strong indication" of fairness).

The Parties have completed enough discovery to recommend settlement.  The pertinent

question is "whether counsel had an adequate appreciation of the merits of the case before

negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal

quotation marks omitted).  Here, through an efficient, informal exchange of information,

Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and

to accurately estimate the damages at issue.  Class Counsel conducted in-depth interviews with

Viafara to determine the hours he worked, the wages he was paid, and the nature of his daily

activities.  Pl. Mems., at 15.  Plaintiffs also obtained a significant amount of documents from

Defendants through discovery, which enabled Plaintiffs to perform detailed damages

calculations.  *Id.*  The Parties' participation in a mediation and two settlement conferences

allowed them to further explore the claims and defenses. The third *Grinnell* factor weighs in favor of final approval.

The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS)(KNF), 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs faced numerous risks as to both liability and damages, including overcoming Defendants' defenses that: (1) with respect to the overtime claims, Plaintiffs may be exempt from federal and state overtime requirements under the Motor Carrier Act, and records produced indicated that bus drivers and miscellaneous workers were paid overtime; (2) with respect to the time shaving claims, Plaintiffs' uniforms were not so integral as to satisfy the requirements for donning and doffing under existing case law in the Second Circuit; (3) with respect to the spread of hours claims, all class members were paid above the minimum wage and not entitled to spread of hours payment. With respect to statutory claims that Defendants failed to provide wage notices and thus owe class members statutory damages for each week such notices were not provided, Plaintiffs admit that the law is uncertain because courts have held that liability only exists when there is an actual underlying claim. The proposed settlement eliminates this uncertainty. This factor therefore weighs in favor of final approval.

The risk of obtaining collective and class certification and maintaining both through trial is also present. Contested collective and class certification motions would likely require extensive discovery and briefing. If the Court did authorize notice to the FLSA collective,

Defendants would likely challenge that determination by seeking decertification at a later date, after the close of discovery. If the Court were to grant class certification, Defendants might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The fifth *Grinnell* factor weighs in favor of final approval.

Even if Defendants could have withstood a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (alterations and citation omitted)). Accordingly, this factor is neutral and does not preclude the Court from approving the settlement.

The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The seventh *Grinnell* factor weighs in favor of final approval.

The Court hereby grants Plaintiffs' Motions for Final Approval and approves the settlement as set forth in the Settlement Agreement.

## B.    Approval of the FLSA Settlement

Because, under the FLSA, "parties may elect to opt in but a failure to do so does not

prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *see Reyes*, 2011 WL 4599822, at *6. Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354; *Reyes*, 2011 WL 4599822, at *6.

In this case, the settlement was the result of arm's-length negotiation involving vigorous back and forth. Lee Decls. ¶ 14. During the entire process, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that is fair and reasonable. The Court hereby approves the FLSA settlements.

## C.    Dissemination of Notice

Pursuant to the Preliminary Approval Order, the Rule 23 and FLSA Notices were sent by first-class mail to: (1) each respective MCIZ Class Member at his or her last known address, with the exception of 43 Class Members for whom Defendants did not provide contact details; and (2) each respective JAD Class Member at his or her last known address, with the exception of three Class Members for whom Defendants did not provide contact details. For the MCIZ Settlement, Advanced Litigation Strategies, LLC ("ALS") remailed notices to 37 Class Members

14

after locating their new addresses. ALS also contacted or attempted to contact the 127 MCIZ

Class Members for which it had telephone contact information. Mem. of Law in Supp. of Pl.'s

Mot. for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses in

the MCIZ Settlement (MCIZ Pl. Fees Mem.), at 17. For the JAD Settlement, ALS remailed

notices to 119 Class Members after locating their new addresses. ALS also contacted or

attempted to contact the 651 JAD Class Members for which it had telephone contact

information. Mem. of Law in Supp. of Pl.'s Mot. for Approval of Attorneys' Fees,

Administration Fees and Reimbursement of Expenses in the JAD Settlement (JAD Pl. Fees

Mem.), at 17.[3] The Court finds that the Rule 23 and FLSA Notices fairly and adequately advised

Class Members of the terms of the Settlement, as well as the right of Rule 23 Class Members to

opt out of or to object to the Settlement, and to appear at the fairness hearing conducted on

November 18, 2013. MCIZ and JAD Class Members were provided with the best notice

practicable under the circumstances. The Court further finds that the Notices and their

distribution comported with all constitutional requirements, including those of due process. The

Court confirms ALS as the claims administrator.

## D.    Attorneys' Fees and Costs, Administration Fees, and Service Awards

On August 16, 2013, the Court preliminarily approved of Lee Litigation Group, PLLC as

Class Counsel for the MCIZ Class because it met all of the requirements of Federal Rule of Civil

Procedure 23(g). On August 23, 2013, the Court preliminarily approved of Lee Litigation

Group, PLLC as Class Counsel for the JAD Class because it met all of the requirements of

Federal Rule of Civil Procedure 23(g). *See Damassia*, 250 F.R.D. at 165 (Rule 23(g) requires

---

[3] The MCIZ Plaintiff Fees Memorandum and the JAD Plaintiff Fees Memorandum shall together be referred to as "Pl. Fees Mems."

the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class") (internal quotation marks omitted).

Class Counsel are experienced employment lawyers. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests. Class Counsel have conducted in-depth interviews with Viafara to determine the hours he worked, the wages he was paid, and the nature of his daily activities. Lee Decls. ¶ 9. Class Counsel committed a "team of attorneys and paralegals" to conduct a thorough investigation into the merits of class members' claims, the issue of class certification, and the issue of damages. Lee Decls. ¶ 8. Class Counsel have committed substantial resources to prosecuting this case.

The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases such as this one. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 121; *Reyes*, 2011 WL 4599822, at *7. Although the Court has discretion to award based on the lodestar method or the percentage-of-recovery method, *McDaniel*, 595 F.3d at 417, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *Sewell*, 2012 WL 1320124, at *13; *Reyes*, 2011 WL 4599822, at *7. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who

16

protect wage and hour rights. *Reyes*, 2011 WL 4599822, at \*7; *Sand*, 2010 WL 69359, at \*3.

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Reyes*, 2011 WL 4599822, at \*7; *Sand*, 2010 WL 69359, at \*3. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Reyes*, 2011 WL 4599822, at \*7; *Sand*, 2010 WL 69359, at \*3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Class Counsel's request for 33.3% of the Fund in both the MCIZ and JAD Settlements, or $91,667 for each Settlement, for a total of $183,334, is reasonable and "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at \*5 (S.D.N.Y. Mar. 24, 2008).

Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir. 2008) does not address a common fund fee petition, it supports class counsel's request for one third of the fund because "'reasonable, paying client[s]' . . . typically pay one-third of their recoveries under private retainer agreements." *Reyes*, 2011 WL 4599822, at \*8 (quoting *Arbor Hill*, 522 F.3d at 191) (internal citation omitted). *See also deMunecas v. Bold Food, LLC*, No. 09 Civ. 440 (DAB), 2010 WL 3322580, at \*9 (S.D.N.Y. Aug. 23, 2010) (finding class counsel's request for one third of the fund reasonable).

In addition, no Class Member objected to Class Counsel's request for one third of the fund, which also provides support for Class Counsel's fee request.

### 1.    *Goldberger* Factors

Reasonableness is the touchstone when determining whether to award attorneys' fees. In

*Goldberger v. Integrated Resources, Inc*, 209 F.3d 43, 50 (2d Cir. 2000), the Second Circuit set forth the following six factors to determine the reasonableness of a fee application: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

### a.    Class Counsel's Time and Labor

As previously explained, Class Counsel spent significant effort to achieve the two $275,000 Settlements.  Before the initiation of this action, Plaintiffs conducted a thorough investigation into the merits of the potential claims and defenses. Lee Decls. ¶ 8.  Plaintiffs focused their investigation and legal research on underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification. *Id.*  Class counsel conducted in-depth interviews with Viafara to determine the hours that he worked, the wages he was paid, the nature of his duties and responsibilities, and other relevant information. *Id.* ¶ 9.  Class Counsel also obtained and reviewed over 15,600 pages of documents from Defendants, including payroll records and personnel documents. *Id.*  Class counsel also performed detailed damages calculations based on the data Defendants provided.  Pl. Mems., at 15.

Plaintiffs engaged in numerous settlement discussions with Defendants.  Lee Decls. ¶ 14. After exchanging initial documents, the Parties engaged in extensive discovery, including e-discovery production, to assess the claims and calculate the damages. *Id.* ¶ 13.  Defendants produced over 15,600 pages of documents, including payroll records and personnel documents. *Id.* ¶ 9.  Defendants produced data showing the number of MCIZ and JAD Class Members and

their work periods and compensation structures.  Pl. Mems., at 2.  Based on this data, Plaintiffs were able to perform damages calculations.  *Id.*

On April 16, 2013, the Parties attended a mediation session before mediator Bonnie Siber Weinstock.  Lee Decls. ¶ 14.  On April 29, 2013, the Parties attended a settlement conference before the undersigned, which was followed by a subsequent settlement conference on June 11, 2013, at which the Parties reached a settlement in principle.  During June and July 2013, the Parties worked towards reducing the settlement to formal settlement agreements for both the MCIZ Settlement and the JAD Settlement.  *Id.* ¶ 15.

Class Counsel has expended over 290 hours of attorney, paralegal, and staff member time on the two Settlements.  Decl. of C.K. Lee in Supp. Of Pls.' Mot. for Approval of Attorneys' Fees, Administration Fees, and Reimbursement of Expenses and Mot. for Approval of Class Representative Service Award in the MCIZ Settlement ("MCIZ Lee Fees & Service Award Decl.") ¶ 4.  Decl. of C.K. Lee in Supp. Of Pls.' Mot. for Approval of Attorneys' Fees, Administration Fees, and Reimbursement of Expenses and Mot. for Approval of Class Representative Service Award in the JAD Settlement ("JAD Lee Fees & Service Award Decl.") ¶ 4.[4]

### b.    Magnitude and Complexity of the Litigation

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *In re Prudential Sec. In. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996). "FLSA claims typically involve complex mixed questions of fact and law," and issues must be resolved "in light of volumes of legislative history and over four decades of legal

---

[4] The MCIZ Lee Fees & Service Award Declaration and the JAD Lee Fees & Service Award Declaration shall together be referred to as "Lee Fees & Service Award Decls."

interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Rule 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Justice is served and consistency and efficiency are achieved by having the litigation in one forum because the same set of operative facts are being applied and analyzed under both statutory frameworks. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

### c.     Risk of Litigation

"Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees." *In re Dreyfus Aggressive Growth Mut. Fund Litigation*, 2001 WL 709262, *6 (S.D.N.Y. June 22, 2001). When considering fee applications, courts must approach them "with an eye to moderation" because of the belief that counsel bring class and collective actions as a "quest for attorneys['] fees." *Goldberger*, 209 F.3d at 53. In *Goldberger*, the court held that the risk needed to enhance attorneys' fees did not exist, and thereby affirmed the district court's decision to decrease the requested fee award. *Id.* at 54 ("[T]he district court found that, from counsel's perspective, this was a 'promising' case, with almost certain prospects of a large recovery from solvent defendants. The court reasonably concluded that enhancing fees above already generous rates included in the lodestar 'would likely result in counsel's overcompensation'").

The same cannot be said in the instant action. Here, Class Counsel faced unique risks on the merits of the claim, including overcoming Defendants' defense that Plaintiffs may be exempt from federal and state overtime requirements under the Motor Carrier Act. To be exempt from

overtime under the Motor Carrier Act, Defendants would have to establish 1) that the employer is a motor carrier; and 2) that the employee's activities "affect vehicular 'safety of operations in interstate or foreign commerce.'" *See Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008) (quoting *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 698 (1947)). Defendants could likely establish both of these requirements in this case. With respect to the overtime claim, Class Counsel also faced difficulties overcoming Defendants' defense that records produced indicated that bus drivers and miscellaneous workers were paid overtime. With respect to the time shaving claim, Class Counsel would have had to overcome Defendants' defense that Plaintiffs' uniforms were not so integral as to satisfy the requirements for donning and doffing under existing case law in the Second Circuit. *See Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007) (finding that the donning and doffing of generic protective gear was similar to changing clothes and not integral to employment). With respect to the spread of hours claim, Class Counsel faced the risk of overcoming Defendants' defense that all class members were paid above the minimum wage and therefore not entitled to spread of hours payment. *See Ellis v. Common Wealth Worldwide Chauffered Transp. of NYC, LLC*, No. 2010 Civ. 1741 (DLI) (JO), 2012 WL 1004848, at * 8 (E.D.N.Y. Mar. 23, 2012) (agreeing with "the majority of courts of this circuit" that "by its plain language, the spread of hours statute applies only to employees making minimum wage"). Class Counsel also faced the difficulty of proving that Defendants owed statutory damages for failing to provide wage notices because the law is uncertain as to whether statutory damages are owed without liability for an underlying claim. *See Chan v. Triple 8 Palace, Inc.*, No. 2003 Civ. 6048 (GEL), 2006 WL 851749, at *20 (S.D.N.Y. Mar. 30, 2006) (denying summary judgment on the claim that Defendants failed to provide wage notices required under New York labor law because Plaintiffs did not demonstrate that the

21

alleged violation resulted in a "redressable harm"). Finally, Defendants may have been able to prove that the individual defendants were not "employers" and thus should not have to pay any amounts to satisfy a judgment.

Unlike in *Goldberger*, the instant matter was not a "'promising' case, with almost certain prospects of a large recovery." 209 F.3d at 54. Class Counsel faced the general risk of recovery, namely, non-collection because of potential bankruptcy and collective and class action waivers. Specifically, Class Counsel faced significant risk with Rule 23 class and FLSA collective certification and proving the merits of the claim. The risk associated with this litigation weigh in favor of granting a contingency fee.

### d.    Quality of Representation

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the background of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, *1 (S.D.N.Y. Jan. 31, 2007). Defendants have agreed to pay a total of $550,000 to settle this litigation. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is reasonable.

As previously mentioned, Class Counsel has substantial experience in wage and hour class and collective action cases. *See* Lee Decls. ¶ 4 (listing cases). Courts have viewed counsel's experience in wage and hour cases as directly responsible for a favorable settlement. *See Velez*, 2007 WL 7232783, at *7 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a contingency fee award); *Frank*, 228 F.R.D. at 189 (citing plaintiffs' counsel's experience to support an attorneys' fee award of 40% of the fund). Class

Counsel's experience in wage and labor litigation also weighs in favor of finding that the fee award is reasonable.

### e.      Requested Fee in Relation to the Settlement

Courts consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall. "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, *6 (S.D.N.Y. Sept. 28, 2003). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510 (CPS)(SMG), 2007 WL 2743675, *16 n. 41 (finding a 30% fee would not constitute a windfall "given the modest size of the [$20 million] settlement").

Class Counsel is requesting 33.3% of the $275,000 MCIZ Settlement and 33.3% of the $275,000 JAD Settlement. This case does not require a "sliding scale" approach to prevent a windfall because the requested amount is "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754862, at *6-7 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action); *see also Clark v. Ecolab, Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA and multi-state wage and hour case).

### f.      Public Policy Considerations

When determining whether a fee award is reasonable, courts consider the social and economic value of the class action, "and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). FLSA and NYLL are remedial statutes designed to protect the wages of workers. The

23

remedial purposes of these statutes require adequate compensation for attorneys who protect those rights. *Khait*, 2010 WL 2025106, at *8; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Moreover, class actions are an invaluable safeguard for public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). The public policy benefits of this action weigh in favor of awarding the requested attorneys' fees. Class Counsel successfully negotiated a settlement agreement that redresses a substantial portion of the monetary damage suffered by MCIZ and JAD Class Members and complies with this Circuit's precedent. When considering all the *Goldberger* factors, the requested fee award appears to be reasonable.

### 2.    Lodestar "cross check"

Applying the lodestar method as a "cross check," *see Goldberger*, 209 F.3d at 50, the Court finds that the fee that Class Counsel seeks is reasonable. Courts award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at *13 ("Courts routinely award lodestar multipliers between two to six."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see, e.g., Steiner v. Am. B'casting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar*); Davis v. J.P. Morgan Chase & Co.*,

827 F. Supp. 2d 172, 184-86 (W.D.N.Y. 2011) (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463 (LHK), 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148 (PBS), 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of six); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (awarding multiplier of seven); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905 (MBM), 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74).

Here, Class Counsel's rates multiplied by their hours totaled $118,315. C.K. Lee spent 154.5 hours, the majority of the total hours, working on the two cases at an hourly rate of $550 dollars per hour. Another lawyer, identified as "Counsel," spent 59.3 hours working on the case at a rate of $350 dollars per hour. A third lawyer, identified as "Associate-1st year" spent 58.8 hours working on the case at a rate of $175 dollars per hour. Finally, a paralegal spent 18.8 hours working on the case at a rate of $125 dollars per hour. The Court finds these rates and hours to be reasonable, considering the rates generally charged in this District. *See Maldonado v. La Nueva Rampa, Inc.*, No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341 (S.D.N.Y. May 14, 2012) (considering the "prevailing market rates 'for similar services by lawyers of reasonably

comparable skill, experience and reputation'" in awarding attorneys fees pursuant to a default judgment).

Because the settlement was bifurcated into the MCIZ Settlement and the JAD Settlement, Class Counsel calculated a lodestar of $59,000 for each settlement. Pl. Fee Mems. note 2. The percentage recoverage on each settlement therefore represents about 1.6 times the lodestar. This multiplier is near the lower end of the range of multipliers that courts have allowed. Furthermore, because "'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at *13 (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)); *Reyes*, 2011 WL 4599822, at *8. The Court hereby grants Plaintiffs' Motions for Attorneys' Fees and awards Class Counsel $91,667 in attorneys' fees for the MCIZ Settlement and $91,667 in attorneys' fees for the JAD Settlement, which is 33.3% of the settlement fund for each settlement.

### 3.    Costs

The Court also awards Class Counsel reimbursement of its litigation expenses in the amount of $2,500. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). Here, Class Counsel's unreimbursed expenses, including filing fees, court reporting, postage, photocopies, and electronic research, Lee Fees & Service Award Decls. ¶ 5, are reasonable and were incidental and necessary to the representation of the class. The

attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

### 4.    Administration Fees

On August 16, 2013, the Court preliminarily approved of the Settlement Administrator's fees for the MCIZ Settlement.  On August 23, 2013, the Court preliminarily approved of the Settlement Administrator's fees for the JAD Settlement.  ALS, the Settlement Administrator, is an administration company established by Class Counsel.  Lee Fees & Service Award Decls. ¶ 9. ALS has been approved as an administrator in other class settlements in the Second Circuit.  *See Khamsiri, et al. v. George & Frank's Japanese Noodle Rest. Inc., et al.*, No. 12 Civ. 0265 (PAE), 2012 WL 1981507 (S.D.N.Y. June 1, 2012); *Flores, et al. v. KC 53 LLC, et al.,* No. 12 Civ. 8095 (S.D.N.Y. Sept. 16, 2013).

ALS has disseminated Class Notice and Opt-out forms to MCIZ and JAD Class Members, performed calculations of awards for each Class Member, reviewed and retained Opt-out forms and Objections submitted by Class Members, and maintained correspondences with Class Members.  *Id.*  The Parties agreed to fees of $25,000 to ALS for the MCIZ Settlement and $40,000 to ALS for the JAD Settlement , which is consistent with prevailing market rates.  Pl. Fees Mems. ¶ 17.[5]  The Court awards the Settlement Administrator fees in the amount of $25,000 for the MCIZ Settlement and $40,000 for the JAD Settlement.  This is within the range of other amounts that have been awarded to the Settlement Administrator in this District.  *See Khamsiri, et al. v. George & Frank's Japanese Noodle Rest. Inc., et al.*, No. 12 Civ. 0265 (PAE), 2012 WL 1981507 (S.D.N.Y. June 1, 2012); *Flores, et al. v. KC 53 LLC, et al.,* No. 12 Civ. 8095 (S.D.N.Y. Sept. 16, 2013).

---

[5] The MCIZ Plaintiffs' Fees Memorandum and the JAD Plaintiffs' Fees Memorandum shall together be referred to as "Pl. Fees Mems."

5.    **Service Awards**

Service awards are common in class action cases and serve to compensate plaintiffs for

the time and effort expended in assisting the prosecution of the litigation, the risks incurred by

becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *Reyes*,

2011 4599822, at *9.   It is important to compensate plaintiffs for the time they spend and the

risks they take. *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669 (BMC), 2012 WL

5874655, at *8 (E.D.N.Y. Nov. 20, 2012).   The Court finds reasonable service awards of

$12,500 to Viafara for the MCIZ Settlement and $12,500 for the JAD Settlement.   These

amounts shall be paid from the settlement fund.

The "Effective Date" of the settlement shall be five days after the date of this Order if no

party appeals this Order.   If a party appeals this Order, the "Effective Date" of the settlement

shall be the day after all appeals are finally resolved.   This Order shall constitute a judgment for

purposes of Rule 58 of the Federal Rules of Civil Procedure.

Within three days of time to appeal this Order has expired, the claims administrator shall

distribute the funds in the settlement account by making the following payments in the order

below:

(a) For the MCIZ Settlement:

(1)    Paying Class Counsel one-third of the fund ($91,667);

(2)    Reimbursing Class Counsel for $2,500 in litigation costs and expenses;

(3)    Paying fees of $25,000 to the Settlement Administrator, Advanced Litigation
       Strategies, LLC.

(4)    Paying service awards of $12,500 to Plaintiff Ariz Arley Viafara;

(5)     Paying the remainder of the fund to class members in accordance with the

allocation plan described in the Settlement Agreement.

(b) For the JAD Settlement:

(1)     Paying Class Counsel one-third of the fund ($91,667);

(2)     Reimbursing Class Counsel for $2,500 in litigation costs and expenses;

(3)     Paying fees of $40,000 to the Settlement Administrator, Advanced Litigation

Strategies, LLC.

(4)     Paying service awards of $12,500 to Plaintiff Ariz Arley Viafara;

(5)     Paying the remainder of the fund to class members in accordance with the

allocation plan described in the Settlement Agreement.

**SO ORDERED this 30th day of April 2014**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**